UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


KENNETH F. LESLEY (#472270)

VERSUS                                        CIVIL ACTION

N. BURL CAIN, ET AL                           NUMBER 13-490-JJB-SCR


## NOTICE

Please take notice that the attached Magistrate Judge's Report
has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days
after being served with the attached report to file written
objections to the proposed findings of fact, conclusions of law,
and recommendations set forth therein.  Failure to file written
objections to the proposed findings, conclusions and
recommendations within 14 days after being served will bar you,
except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings and legal conclusions
accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE
WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, February 3, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


KENNETH F. LESLEY (#472270)

VERSUS                                    CIVIL ACTION

N. BURL CAIN, ET AL                       NUMBER 13-490-JJB-SCR


**MAGISTRATE JUDGE'S REPORT**

Before the court are the plaintiff's Memorandum in Support of Motion for Summary Judgment, which will be construed as a motion for summary judgment,[1] and the defendants' Motion for Summary Judgment.  Record document numbers 17 and 23, respectively. Plaintiff's motion is opposed.[2]

For the reasons which follow, the defendants' Motion for Summary Judgment should be granted in part and the plaintiff's motion for summary judgment should be denied.


**Background**

Pro se plaintiff, an inmate at Louisiana State Penitentiary, Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983

---

[1] On June 24, 2014, the parties were placed on notice that the pleadings filed by the plaintiff on June 6, 2014, consisting of a Memorandum in Support of Motion for Summary Judgment, a Statement of Undisputed Facts, a Declaration Under Penalty of Perjury in Support of Motion for Summary Judgment and numerous exhibits filed on June 6, 2014, were construed as a Motion for Summary Judgment pursuant to Rule 56, Fed.R.Civ.P.  Record document number 18.

[2] Record document number 24.

against Warden N. Burl Cain, Asst. Warden Kenneth Norris and Dr. Jason Collins. Plaintiff alleged that the defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.

Plaintiff moved for summary judgment relying on a statement of undisputed facts, his Declaration Under Penalty of Perjury in Support of Motion for Summary Judgment, the results of Administrative Remedy Procedure (hereafter "ARP") LSP-2012-3630, a copy of Department Regulation No. B-06-001, copies of Health Care Policy Nos. HC-01, HC-03, HC-11 and HC-16, a copy of the LSP Correctional Officer Training Program - Legal Responsibility and Authority of Correctional Officers, copies of Training Transcripts of Warden Cain, Asst. Warden Norris and Dr. Collins, and copies of the plaintiff's medical duty status forms and medical records.[3]

Defendants moved for summary judgment relying on a statement of undisputed facts, the affidavits of Dr. Collins, Warden Cain, Asst. Warden Norris and Dr. Randy Lavespere, copies of the Training

---

[3] Plaintiff also argued that allegedly unanswered requests for admissions are deemed admitted and sought to rely upon the admissions in support of his motion for summary judgment. Specifically, the plaintiff argued that because the defendants failed to answer his request for admissions, by operation of law the requests are deemed admitted. Record document number 17, pp. 5-13. However, there is no evidence in the record that the plaintiff propounded a request for admissions. Plaintiff did not file a copy of the request for admissions as was required by the court's scheduling order. Record document number 4. Accordingly, the purported admissions were not considered in support of the plaintiff's motion for summary judgment.

Transcripts of Warden Cain, Asst. Warden Norris, Dr. Collins, and EMTs, and copies of the plaintiff's medical records and ARP LSP-2012-3630.

## I. Factual Allegations

Plaintiff alleged that on May 8, 2012, he was injured while lifting an object. Plaintiff alleged that he received emergency medical treatment and was issued a medical duty status restricting his activities. Plaintiff alleged that on May 21, 2012, he was examined by Dr. Lavespere who told him he had a hernia which requires corrective surgery. Plaintiff alleged that the hernia causes him severe pain and disrupts his daily activities. Plaintiff alleged that he has sought medical treatment for complaints of abdominal pain and problems with bowel movements.

Plaintiff alleged that he was told that he needs surgery to repair the hernia and that he also needs knee surgery. Plaintiff alleged that he was told that due to a lack of funds, no surgery would be performed unless the underlying condition was considered life-threatening.

Plaintiff alleged that the defendants adopted a policy of providing only minimal care to prisoners based upon cost.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue

as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). "[A] party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). The burden then shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is genuine issue for trial.'" *Id*. at 324; *see* Fed.R.Civ.P. 56(c)(1). "If a party fails to properly support an assertion of fact ... as required by Rule 56(c), the court may [ ] ... grant summary judgment if the motion and support materials – including the facts considered undisputed – show that the movant is entitled to it." Fed.R.Civ.P. 56(e)(3). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).

## B. Rights of Other Prisoners

The right to bring an action under the civil rights act is

personal in nature and may not be asserted by third parties. *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986). All persons who claim a deprivation of constitutional rights must prove some violation of their personal rights. *Id.* Insofar as the plaintiff's complaint can be read to assert a deliberate indifference claim on behalf of other prisoners, the claim is not a personal right which he may assert.

### C. Official Capacity

Defendants argued that they are entitled to Eleventh Amendment immunity insofar as the plaintiff sued them in their official capacity.

The distinction between personal and official capacity suits was clarified by the U.S. Supreme Court in *Hafer v. Melo, et al,* 502 U.S. 21, 112 S.Ct. 358 (1991). A suit against a state official in his official capacity is treated as a suit against the state. *Id.*, 502 U.S. at 25, 112 S.Ct. at 361, *citing Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985). Because the real party in interest in an official-capacity suit is the governmental entity and not the named individual, the "entity's `policy or custom' must have played a part in the violation of federal law." *Graham, supra*, at 166, 105 S.Ct. at 3105.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken

under of color of state law.  A showing that the official, acting under color of state law, caused the deprivation of a federal right is enough to establish personal liability in a section 1983 action. *Hafer*, 502 U.S. at 25, 112 S.Ct. at 362.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989), makes it clear that the distinction between official-capacity suits and personal-capacity suits is more than a "mere pleading device."  Officers sued in their personal capacity come to court as individuals.  A state official in his or her official capacity, when sued for injunctive relief, would be a person under section 1983 because official-capacity actions for prospective relief are not treated as actions against the state. *Will*, 491 U.S. at 71, 109 S.Ct. at 2311, n. 10, *quoting Kentucky v. Graham*, 473 U.S. at 167, 105 S.Ct. at 3106, n. 14.

Thus, the plaintiff may recover money damages against the defendants insofar as the defendants were sued in their individual capacities for actions taken by them under color of state law which caused the deprivation of constitutional rights.  Additionally, because the plaintiff sought prospective injunctive relief his claim against the defendants in their official capacity is also actionable under § 1983.  Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief, whether in the form of damages or prospective injunctive relief.

## D. Medical Indifference Claims

Plaintiff alleged that he was denied adequate medical treatment. Specifically, the plaintiff alleged that he requires surgeries on his knee and to repair a hernia, but the defendants have implemented a policy which only authorizes a surgery when the prisoner's condition is life-threatening. Plaintiff argued that he was denied surgery to repair his knee and hernia based on the cost and available funding rather than based on the medical necessity of the surgical procedures.

A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id*.

To prevail on an Eighth Amendment claim for deprivation of medical care a prisoner must prove that the care was denied and that the denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976); *Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment he felt he should have is not

the issue. *Estelle v. Gamble*, *supra*; *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981). Unsuccessful medical treatment does not provide a basis for a civil action under 42 U.S.C. § 1983 for violation of a constitutional right. *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991), *Johnson v. Treen, supra*. Negligence, neglect or medical malpractice does not rise to the level of a constitutional violation. *Varnado, supra*.

To be liable under § 1983 a person must either be personally involved in the acts causing the alleged deprivation of constitutional rights, or there must be a causal connection between the act of that person and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983). Plaintiff's allegations that the defendants are responsible for the actions of their subordinates is insufficient to state a claim under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978).

Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987); *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), *cert. denied*, 480 U.S. 917, 107 S.Ct. 1369 (1987) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct.

2018, 2037 (1978)). The existence of a constitutionally deficient policy cannot be inferred from a single wrongful act. *O'Quinn v. Manuel*, 773 F.2d 605, 609, 610 (5th Cir. 1985) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427 (1985)).

Plaintiff's medical records showed the following. On January 23, 2012, the plaintiff was examined at the Physician's Clinic of the R.E. Barrow, Jr. Treatment Center for a followup examination regarding complaints of left knee pain associated with a meniscus tear for which the plaintiff was apparently already under the care of an orthopedist.[4] Plaintiff was examined and instructed to continue taking Naprosyn®.[5] On February 20, 2012, the plaintiff was examined for complaints of injuring his left knee during a fall.[6] X-rays were negative.[7]

On April 25, 2012, the plaintiff was examined at the Physician's Clinic of the R.E. Barrow, Jr. Treatment Center for complaints of back pain and a possible inguinal hernia.[8] The hernia was not palpable.[9]

On May 8, 2012, the plaintiff submitted a Health Care Request

---

[4] Record document number 23-3, p. 10.

[5] *Id*.

[6] *Id*. at 11.

[7] *Id*.

[8] *Id*. at 14.

[9] *Id*.

Form seeking emergency medical treatment for complaints of pain on the right side of his groin after lifting a concrete pot.[10] Physical examination revealed no edema and the plaintiff denied frequent or painful urination.[11] Plaintiff was instructed to continue his current medications, a medical duty status was issued restricting lifting objects over 10 lbs. and no prolonged standing or walking for one week.[12] On May 15, 2012, the plaintiff was seen at the Emergency Room of the R.E. Barrow, Jr. Treatment Center for complaints of groin pain, dizziness and headache for one week after lifting a heavy object.[13] Plaintiff was examined by Dr. Collins who diagnosed the plaintiff with muscle strain.[14] On May 21, 2012, the plaintiff was examined at the Physician's Clinic by Dr. Lavespere for complaints of groin pain.[15] Physical examination revealed no obvious herniation and an abdominal wall defect was detected with deep palpation.[16] Plaintiff was prescribed pain medication and was referred for surgical evaluation.[17] On May 29, 2012, the plaintiff

---

[10] *Id.* at 15.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 17.

[14] *Id.*

[15] *Id.* at 18.

[16] *Id.*

[17] *Id.*

filed a Health Care Request Form seeking routine sick call for complaints of abdominal pain when bending, lifting or walking.[18] Plaintiff's abdomen was SNT [soft, non-tender] and was not distended.[19] Plaintiff was in no acute distress and was advised to keep his appointment.[20]

On June 10, 2012, the plaintiff completed a Health Care Request Form seeking medical treatment for complaints of severe pain in his stomach pain which felt like his stomach was pushing out and a burning sensation in his groin.[21] Dr. Toce reviewed the plaintiff's chart and noted the surgical consultation and the pain medications previously ordered.[22] Dr. Toce entered a notation that the plaintiff was not taking his medication.[23] On June 28, 2012, the plaintiff completed a Health Care Request Form seeking routine sick call for complaints of a burning sensation inside his waist and groin; a pinching and sometimes bubbling sensation.[24] Dr. Lavespere conducted a chart review and noted that the plaintiff was

---

[18] *Id*. at 19.

[19] *Id*.

[20] *Id*.

[21] *Id*. at 20.

[22] *Id*.

[23] *Id*.

[24] *Id*. at 21.

awaiting a surgical consultation.[25]

On July 22, 2012, the plaintiff completed a Health Care Request Form seeking medical treatment for complaints that pain medication for his knee had expired and that he continued to experience a burning sensation that he related to a hernia.[26] Plaintiff was prescribed Naproxen.[27]

On August 1, 2012, the plaintiff completed a Health Care Request Form seeking emergency medical treatment for complaints of right leg pain after a fall.[28] Plaintiff complained that it felt like something had popped.[29] Plaintiff was examined by Dr. Collins who noted no swelling and diagnosed a muscle pull.[30] Plaintiff was prescribed crutches for two weeks.[31] On August 8, 2012, the plaintiff completed a Health Care Request Form declaring himself a medical emergency for complaints of right leg pain, ankle swelling and numb toes.[32] Physical examination showed significant edema with no pitting, mild bruising to ankle with no discoloration and the

---

[25] *Id.*

[26] *Id.* at 22.

[27] *Id.*

[28] *Id.* at 23.

[29] *Id.*

[30] *Id.* at 24.

[31] *Id.*

[32] *Id.* at 25.

remainder of physical examination was unremarkable.[33] Plaintiff was prescribed bed rest and instructed to keep his upcoming scheduled appointment.[34] On August 10, 2012, the plaintiff was examined at the Physician's Clinic by Dr. Toce for a followup examination of the plaintiff's right calf muscles.[35] In addition, Dr. Toce noted that the plaintiff had a hernia for which he had been referred for a surgical consultation on May 21, 2012 and left knee surgery was still pending.[36] Plaintiff was issued a medical duty status which would permit him to use crutches.[37]

On October 8, 2012, the plaintiff was examined at the Physician's Clinic for complaints of right calf pain and inguinal hernia.[38] Plaintiff complained that the hernia had enlarged and that it caused him pain on a daily basis.[39] Dr. Lavespere examined the plaintiff and found the right calf injury resolved and noted that the plaintiff had been referred for a surgical consult regarding an inguinal hernia on May 21, 2012 and was presently

---

[33] *Id.*

[34] *Id.*

[35] *Id.* at 26.

[36] *Id.*

[37] *Id.*

[38] *Id.* at 27.

[39] *Id.*

awaiting an evaluation.[40]

On November 5, 2012, the plaintiff completed a Health Care Request Form seeking routine sick call treatment for complaints of a burning sensation in his groin and difficulty with bowel movements.[41] Mild swelling in the groin region was noted.[42] Plaintiff was instructed to keep his appointment.[43]

On December 4, 2012, the plaintiff completed a Health Care Request Form seeking routine sick call for complaints of a burning pain associated with a hernia and difficulty with bowel movements.[44] Plaintiff requested evaluation by a doctor.[45] Plaintiff was instructed to keep his appointment.[46]

On January 8, 2013, the plaintiff was examined at the Physician's Clinic for complaints of left groin pain and hard stools.[47] Plaintiff was prescribed a laxative[48] and a second referral was sent to the LSU Health System General Surgery seeking

---

[40] *Id.*

[41] *Id.* at 28.

[42] *Id.*

[43] *Id.*

[44] *Id.* at 29.

[45] *Id.*

[46] *Id.*

[47] *Id.* at 30.

[48] *Id.*

evaluation of the plaintiff's left inguinal hernia.[49]

On February 19, 2013, the plaintiff completed a Health Care Request Form seeking routine sick call for complaints of pain and swelling in his groin due to hernia.[50] Medical personnel examined the plaintiff and noted that the plaintiff had experienced chronic pain for over one year and physical examination showed mild swelling in groin. [51] Plaintiff was advised to keep his appointment.[52]

On March 11, 2013, the plaintiff completed a Health Care Request Form seeking medical treatment for ongoing left knee pain and increased hernia pain.[53] Plaintiff was examined by an emergency medical technician and was advised to keep his appointment.[54]

On April 25, 2013, the plaintiff completed a Health Care Request Form seeking routine sick call for complaints of ongoing left knee pain and increased hernia pain.[55] Plaintiff was examined by an emergency medical technician and was advised to keep his

---

[49] *Id*. at 31.

[50] *Id*. at 32.

[51] *Id*.

[52] *Id*.

[53] *Id*. at 33.

[54] *Id*.

[55] *Id*. at 33.

appointment.[56]

On May 9, 2013, the plaintiff was examined by an orthopedist for left knee pain.[57] The orthopedist noted that the plaintiff had an MRI on August 20, 2010, and that he sustained a medial meniscus tear.[58] Plaintiff received an injection in April 2011.[59] The orthopedist requested that the plaintiff be rescheduled for evaluation for a different brace, injection or repair.[60]

On May 20, 2013, – a year after he had been referred for a surgical consultation on May 21, 2012 – the plaintiff was examined via the LSUHSC Telemedicine Program for evaluation of an inguinal hernia.[61] Plaintiff was assessed with a likely left inguinal hernia but required a clinic visit to confirm presence of hernia, and if present, operating room planning.[62]

On June 17, 2013, the plaintiff was examined at the Physician's Clinic Orthopedic Clinic for followup evaluation of

---

[56] *Id.*

[57] *Id.* at 35.

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.* at 38.

[62] *Id.* at 39.

left knee pain.[63]  An MRI of the plaintiff's left knee was ordered.[64]

On July 18, 2013, the plaintiff completed a Health Care Request Form for complaints that he was out of medication and for hernia and left knee pain.[65]  Plaintiff's prescriptions were renewed.[66]  On August 12, 2013, the plaintiff completed a Health Care Request Form seeking sick call for complaints of hernia and knee pain and constipation.[67]  Plaintiff's chart was reviewed and a laxative was ordered.[68]

On August 20, 2013, the plaintiff was examined at the Physician's Clinic for complaints of left knee pain and inguinal hernia.[69]  Plaintiff was given a medical duty status and medication.[70]  A notation entered in the plaintiff's medical chart indicated that the plaintiff was awaiting a MRI on left knee and surgical repair on inguinal hernia.[71]

On September 13, 2013, the radiology Final Report of the MRI

---

[63] *Id.* at 40.

[64] *Id.*

[65] *Id.* at 41.

[66] *Id.*

[67] *Id.* at 42.

[68] *Id.*

[69] *Id.* at 43.

[70] *Id.*

[71] *Id.*

of the plaintiff's left knee indicated that the plaintiff has a possible tear of the ACL at its femoral attachment, a tear at the inner margin of the posterior horn of the lateral meniscus, mild patellofemoral and lateral suprapatellar effusion and a small Baker's cyst.[72]

On September 27, 2013, the plaintiff was examined at the Physician's Clinic Orthopedic Clinic for a followup appointment post-MRI evaluation.[73] Plaintiff was provided a knee brace and pain medication.[74]

On February 4, 2014, – 20 months after he had been referred for a surgical consultation on May 21, 2012, and eight months after the plaintiff was examined via the LSUHSC Telemedicine Program for evaluation of an inguinal hernia – the plaintiff was examined at the Physician's Clinic for a followup appointment for complaints of knee and left inguinal hernia.[75] Plaintiff was assessed as having a left inguinal hernia and chronic left knee disruption which was being followed by an orthopedist.[76] The plan of treatment was to

---

[72] *Id.* at 44.

[73] *Id.* at 45.

[74] *Id.*

[75] *Id.* at 47.

[76] *Id.*

"wait for surgery, ortho F/U" and to renew medications.[77]

On March 31, 2014, the plaintiff was seen at the Orthopedic Clinic at the R.E. Barrow, Jr. Physician's Clinic for a six month followup of left knee injury.[78] Physical therapy to strengthen the plaintiff's hamstrings and quadriceps was recommended.[79]

On May 29, 2014, the plaintiff was examined at the Physician's Clinic for chronic complaints of pain associated with inguinal hernia and left knee pain.[80] Physical examination showed right hip pain on top of inguinal canal and scrotal pain from herniation.[81] Medication was renewed.[82]

All of the summary judgment evidence has been considered. Even though there may be many facts that are not genuinely disputed, on summary judgment the court must draw all reasonable inference from both the disputed and undisputed facts in favor of the party opposing summary judgment. Drawing all reasonable inferences in favor of the plaintiff, as the party opposing the defendants' summary judgment motion, the summary judgment evidence

---

[77] *Id.*

[78] *Id.* at 48.

[79] *Id.*

[80] *Id.* at 50.

[81] *Id.*

[82] *Id.*

is sufficient for a reasonable jury to find that the defendants were deliberately indifferent to the plaintiff's serious need for hernia and knee surgery. There is no evidence that any defendant or outside consultant affirmatively determined that the plaintiff did not need surgery to repair his hernia and knee. Defendants knew that the state's charity hospital had been closed, resulting in a backlog for patients needing hernia operations.[83] A reasonable jury could find that procedure for obtaining medically needed surgery would result in lengthy delays, during which the plaintiff would continue to experience pain, and that medically necessary surgeries would not be performed. Therefore, a reasonable jury could find that the defendants were deliberately indifferent to the plaintiff's serious medical needs.

For essentially the same reasons, the plaintiff's summary judgment motion should also be denied. Viewing all of the summary judgment evidence in the light most favorable to the defendants, the parties opposing the plaintiff's summary judgment motion, a reasonable jury could find that the defendants provided reasonably prompt and appropriate medical evaluation and treatment for the plaintiff's knee and hernia condition. There is no evidence any defendant actually denied the plaintiff knee and hernia surgeries due to LSP budget constraints.

---

[83] See record document number 23-5, Affidavit of Asst. Warden Norris, ¶¶ 5, 7.

**F. Supplemental Jurisdiction**

Plaintiff sought to invoke the supplemental jurisdiction of this court. District courts may decline to exercise supplemental jurisdiction over a claim if the claim raises a novel or complex issue of State law; the claim substantially predominates over the claims over which the district court has original jurisdiction; if the district court has dismissed all claims over which it had original jurisdiction; or for other compelling reasons. 28 U.S.C. § 1367. Plaintiff's allegations of deficient and unsuccessful medical care amount to state law negligence or medical malpractice claims. The court should decline to exercise supplemental jurisdiction over such state law claims.

<u>RECOMMENDATION</u>

It is the recommendation of the magistrate judge that:

(1) the defendants' Motion for Summary Judgment be granted in part, dismissing any claims made on behalf of other prisoners and denying the remainder of the defendants' motion;

(2) the Plaintiff's Motion for Summary Judgment be denied;

(3) the court decline to exercise supplemental jurisdiction over any state law claims and these claims be dismissed without prejudice; and,

(4) this action be referred back to the magistrate judge for further proceedings on the plaintiff's Eighth Amendment deliberate

medical indifference claim.

Baton Rouge, Louisiana, February 3, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE